WILLIAM N. JOHNSTON, Respondent, *v.* SPENCER TRASK et al.,
Appellants.

Defendants, who were bankers and brokers, purchased certain bonds for
plaintiff under an oral contract by which they agreed that in case
plaintiff should thereafter become dissatisfied they would, on demand,
take the bonds off his hands at what they cost him. Upon payment of
the purchase-price and their commissions defendants delivered the bonds
to plaintiff, who thereafter tendered them back and demanded the price
paid, and on defendants' refusal to accept and pay brought this action
for breach of the contract    *Held,* that said provision in the agreement
was not a contract for the sale of goods, chattels or things in action
within the statute of frauds (2 R. S. 136, § 3), but was a provision for
the rescission of the entire contract, and so was valid.

*Hagar* v. *King* (38 Barb. 200) distinguished.

An oral contract, by which a person sells his own chattels or choses in
action for more than fifty dollars, payment and delivery being made,
and agrees to take them back from and repay the purchase-price to the
purchaser on demand, is an entire contract, and the promise to take back
the property and repay the purchase-price is not void under the statute
of frauds.

When an agent, by an oral contract sells and delivers the goods of a dis-
closed principal, his personal oral warranty of quality is not a contract,
independent of the contract of sale, but is part of it, and one considera-
tion is sufficient to support the sale and warranty.

Defendants admitted in their answer that they were bankers and brokers,
and that they entered into a contract to purchase the bonds for plaintiff,
which was within the ordinary business of the firm. They neither
averred nor gave evidence tending to show that the promise to take back
the bonds was beyond the scope of their business. It was shown that, in
addition to the business usually done by bankers and brokers, defendants
were accustomed to purchase and carry securities on margins for their
customers, and that the managing partner made the promise to take back
the bonds. *Held,* that the evidence would not justify a holding, as
matter of law, that the promise upon which the action was brought was
so far beyond the scope of the business of defendants' firm that plaintiff
had no right to rely upon it; that the evidence was sufficient to cast upon
the defendants the burden of rebutting the presumption arising from the
evidence and the pleadings, that the managing partner had authority to
make the contract.

It appeared that plaintiff retained the bonds from November 16, 1882, until
April 28, 1884, before he requested defendants to take them back, during
which time they had greatly depreciated. It was shown, however, that

defendants' managing partner had on several occasions advised plaintiff not to part with the bonds, and assured him that they were good and would ultimately advance in the market. *Held,* that plaintiff was not guilty of laches.

Reported below, 40 Hun, 415.

(Argued June 13, 1889; decided October 8, 1889.)

APPEAL from a judgment of the General Term of the Supreme Court in the third judicial department, entered on an order made January 26, 1886, which affirmed a judgment in favor of plaintiff, entered upon a verdict directed at Circuit.

This was an action for a breach of contract.

Since January, 1882, the defendants have been bankers and brokers, doing business as partners under a firm name. On the trial of the issues the plaintiff testified that on the 18th day of January, 1882, the managing partner of the firm, at its place of business, orally agreed with the plaintiff to purchase for him, if they could be bought in the market, income mortgage bonds of the Ohio Central Railroad of the par value of $10,000, and (giving the language of said partner) "Any time you want to get rid of them we will take them off of your hands at what they cost you." Later in the day the defendants reported to the plaintiff that they had purchased the bonds for $4,800, and their commissions were $12.50, and thereupon the plaintiff paid $1,000 towards the purchase-price. The bonds were retained by the defendants as security for the sums due from the plaintiff to them until November 16, 1882, when the plaintiff paid the full purchase-price for the bonds, commissions and interest, and took them into his possession. The market-price of the bonds declined until April 28, 1884, when they were selling for about ten cents on a dollar. On this date the plaintiff tendered the bonds to the defendants and demanded that they should pay him $4,812.50, which they refused to do, and April 30, 1884, this action was brought, on contract, to recover that sum. The defendants did not con-

tradict the plaintiff's evidence, which was corroborated by three witnesses, but at the close of his case they moved for a nonsuit, on the grounds :

(1.) That the oral contract was void for not complying with the following section of the statute of frauds.

"§ 3. Every contract for the sale of any goods, chattels or things in action, for the price of fifty dollars or more, shall be void, unless, (1.) A note or memorandum of such contract, be made in writting, and be subscribed by the parties to be charged thereby, or, (2.) Unless the buyer shall accept and receive part of such goods, or the evidences, or some of them, of such things in action, or, (3.) Unless the buyer shall, at the time, pay some part of the purchase-money."

(2.) That the evidence was insufficient to sustain the conclusion that the managing partner had authority to bind the firm by such a contract :

(3.) That the plaintiff did not tender the bonds and demand the repayment of the price within a reasonable time, and thereby lost his right of action.

The motion was denied, and the defendants not asking to have any question submitted to the jury, a verdict was directed in favor of the plaintiff for $4,800, with interest thereon from April 28, 1884.

*Horace E. Smith* for appellants. The plaintiff has neither shown, nor attempted to show, any authority in Graves, the partner and agent of the other defendants, to make the alleged contract, and they are not bound by it. (Dunlap's Paley on Agency, 309, 311 ; *Pole* v. *Leask*, 33 L. J. 161, 162 ; Story on Agency, § 28 ; Bishop on Con. [enlarged ed.] § 1135 ; *Tausig* v. *Hart*, 58 N. Y. 425 ; 1 Wood's Coll. on Part. 649, 650 ; *Wells* v. *March*, 30 N. Y. 344 ; *Hunt* v. *Chapin*, 6 Lans. 139, 143 ; Wharton on Agency, §§ 122, 137, 138, 139, 414, 459, 460, 695, 723 ; *Merchant* v. *Belding*, 49 How. Pr. 344 ; *Graves* v. *Hallenberger*, 51 Ind. 66 ; *Davidson* v. *Porter*, 57 Ill. 300, 305 ; *Dozier* v. *Freeman*, 47 Miss. 647 ; *Tompkins* v. *Woodyard*, 5 W. Va. 216 ; *Baker* v. *Drake*, 66 N. Y.

518; *Gruman* v. *Smith*, 81 id. 25, 27; *Markham* v. *Jaudon*, 41 id. 235.) The receipt and retention by defendants of their commission, $12.50, was not a ratification of Graves' authority to make the alleged contract of purchase; and they are not estopped from setting up lack of authority in their agent. (Story on Agency [9th ed.] § 239, n. 1; *Condit* v. *Baldwin*, 21 N. Y. 219, 224, 225; *Smith* v. *Tracy*, 36 id. 79, 83, 84, 86; *Ritch* v. *Smith*, 82 id. 627; *Whitney* v. *Martine* 88 id. 535; *Van Wyck* v. *Watters*, 81 id. 352, 355; *Fellows* v. *Longyor*, 91 id. 324, 330.) The executory agreement made by Graves to purchase the bonds in question of the plaintiff, at any time in the future when he might wish to get rid of them, is within the statute of frauds in relation to the sale of "goods, chattels or things in action, for the price of fifty dollars or more." and is void. (3 R. S. [5th ed.] 221, § 2, subd. 3: *Bennett* v. *Hull*, 10 Johns. 364; *Crookshank* v. *Burrell*, 18 id. 58; *Lawrence* v. *Woods*, 4 Bosw. 354; *People* v. *Beebe*, 1 Barb. 379; *Organ* v. *Steuart*, 60 N. Y. 413, 420; *Hunt* v. *Wyman*, 100 Mass. 198; *Moss* v. *Sweet*, 16 Q. B. 439; *Hagar* v. *King*, 38 Barb, 200, 206; *Condit* v. *Baldwin*, 21 N. Y. 219, 221; *Bell* v. *Day*, 32 id. 165, 178; *Van Wyck* v. *Watters*, 81 id. 352; *Fellows* v. *Longyor*, 91 id. 324.) Assuming that the plaintiff ever had a right to tender the bonds to defendants, and to receive therefor the purchase-price, he did not exercise his option within a reasonable time, and lost his right by the delay. (1 Parsons on Con. [7th ed.] *539, note *s*; Benjamin on Sales, § 597; *Fitzgerald* v. *Woodruff*, 96 N. Y. 561, 565; *Sice* v. *Cunningham*, 1 Cow. 39; *Hill* v. *Hobart*, 16 Me. 168; *Carter* v. *Carter*, 14 Pick. 424.

*John M. Carroll* for respondent. From the circumstances it appears that the court and jury might legitimately find that Graves had original authority to make this contract, and all of the defendants knew of his making it, and approved of it, and their keeping of the commissions and moneys paid to them was a ratification of his acts which was equivalent to original authority. (*Woodward* v. *Winship*,

12 Pick. 430; *Sandilands* v. *Marsh*, 2 B. &. A. 673, 677; 4 Eng. Com. Law Rep. 695.) The burden of proving Graves' want of authority in this case, under the circumstances, was on the defendants. (Collyer on Partnership, 396, 397, 406, 418, 419, § 406.) As a matter of law, Graves had authority to make this contract in behalf of his firm. (2 Parsons on Contracts [4th ed.] 32; Collyer on Partnership [5th Am. ed.] 406, § 428; Parsons on Partnership, 172; *Sandilands* v. *Marsh*, 2 B. & A. 673, 677; 4 Eng. Com. Law Rep. 695; *Heirn* v. *McCaughan*, 32 Miss. 17–19; 19 U. S. Dig. 18, 59, 515, § 54; *Griswold* v. *Hayden*, 25 N. Y. 595; *Woodward* v. *Winship*, 12 Pick. 430; *Baker* v. *Drake*, 66 N. Y. 518, 522; *Ex parte Gordon*, 15 Vesey, Jr. 286.) The part of the contract to take the bonds from plaintiff at cost may be regarded as in the nature of a contract to indemnify the plaintiff against loss from their purchase, and as such was within the scope of Graves' authority and binding upon the firm. (*Wilkins* v. *Pearce*, 5 Denio, 541; 2 N. Y. 469; *First Nat. Bk.* v. *Carpenter*, 41 Iowa, 518; Collyer on Partnership, 406; *Sandilands* v. *Marsh*, 2 B. & A. 673, 675, 678, 679, 680.) The bonds were not delivered and received under a contract different from and subsequent to the one proved. (*Freund* v. *I. and T. Nat. Bk.*, 3 Hun, 689; *Morss* v. *Osborn*, 64 Barb. 543; *Cook* v. *N. Y. C. R. R. Co.*, 3 Keyes, 476; *Heyne* v. *Blair*, 62 N. Y. 19.) The contract was not void by the statute of frauds. (*Wooster* v. *Sage*, 6 Hun, 285; 67 N. Y. 67; *Fitzpatrick* v. *Woodruff*, 96 id. 561; *White* v. *Knapp*, 47 Barb. 549, 555; *Allen* v. *Eighmie*, 14 Hun, 559; 79 N. Y. 632.) Plaintiff was not guilty of laches as to returning bonds. (*Wooster* v. *Sage*, 67 N. Y. 67; *Fitzpatrick* v. *Woodruff*, 96 id. 561.) The defendants having received the moneys paid to them by the plaintiff under this contract made by their managing partner in their behalf, and having ever since retained and enjoyed it, ratified and affirmed the contract in its entirety, must perform the obligations imposed upon them by its terms. (1 Wait's Act. and Def. 233; 8 id. 542; 5 id. 508, 509; *Voorhees* v. *Earl*, 2 Hill, 288; *Goelth* v. *White*,

35 Barb. 76; *Graham* v. *Meyer*, 99 N. Y. 611, 615; *Gould* v. *C. C. Nat. Bk.*, 86 id. 75.)

FOLLETT, Ch. J. An oral contract, by which a person sells his own chattels or choses in action for more than $50, payment and delivery being made, and agrees to take them back from and repay the purchase-price to the purchaser on demand, is an entire contract, and the promise to take back the property and repay the purchase-price is not void by the third section of the statute of frauds. (*Wooster* v. *Sage*, 67 N. Y. 67; *Fitzpatrick* v. *Woodruff*, 96 id. 561; *White* v. *Knapp*, 47 Barb. 549; *Williams* v. *Burgess*, 10 A. & E. 499; *Fay* v. *Wheeler*, 44 Vt. 292; *Dickinson* v *Dickinson*, 29 Conn. 600; 1 Benj. on Sales [Corbin's ed.] § 169.)

Executed contracts of sale, embracing a promise by vendors of chattels that in case they do not suit the purchaser or do not possess certain specified qualities the vendor will repay to the vendee the purchase-price upon their return, have been frequently considered by the courts. (*Towers* v. *Barrett*, 1 D. & E. 133; *Thornton* v. *Wynn*, 12 Wheat. 183), but no case has been cited holding that such a promise on the part of a vendor is an independent contract. When an agent, by an oral contract, sells and delivers the goods of a disclosed principal, his personal oral warranty of quality is not a contract independent of the contract of sale, but is a part of it, and one consideration is sufficient to support the sale and warranty. The oral contract of the defendants, that they would purchase for the plaintiff in the market at market rates the bonds for the usual compensation, and in case he should thereafter become dissatisfied with the bonds, that they would, on demand, take them off his hands at what they cost him, was a single contract. Under this contract, the bonds were purchased and held by the defendants until the purchase-price and their commissions were paid, and then they delivered the bonds to the plaintiff. The promise of the defendants that they would take the bonds off the plaintiff's hands at what they cost him, upon request, is not a contract for the sale of goods, chattels

or things in action, within the third section of the statute of frauds, but is a provision for the rescission of the entire contract, and is valid.

The learned counsel for the appellants, in support of his contention, cites *Hagar* v. *King* (38 Barb. 200). In that case a firm was indebted to the plaintiffs in the action for work performed in constructing part of a railroad. The defendant, who was one of the firm, asked the plaintiffs to take from the railroad corporation its bonds in payment of the debt, orally agreeing with the plaintiffs, for himself, that if they would so take the bonds, he, not the firm, would, within ten days, take the bonds from and pay to the plaintiffs the amount of the firm's debt. The plaintiffs assented to the proposal. Afterwards they accepted from the corporation its due bill for the amount due them for their work, payable in the bonds of the corporation, and gave a receipt for all of their demands for work done on the road. The plaintiffs then indorsed the due bill, delivered it to the corporation and received the bonds. Within ten days the plaintiffs tendered the bonds to the defendant and demanded the amount for which they were taken in payment. It was held that the oral agreement embraced two contracts, one to accept the bonds in payment of the debt, and another to purchase the bonds at a future day at a given price, and that the latter contract was within the third section of the statute of frauds and void. That case is easily distinguishable from the one at bar. The defendant in that case, as an individual, was not indebted to the plaintiffs, and his individual contract to take back the bonds was held to be distinct from the contract by which the firm's debt was paid in the manner described. Was the evidence sufficient to sustain the conclusion that the managing partner was authorized to make the contract in behalf of the firm?

The defendants admitted in their answer that they were bankers and brokers, and that they entered into that part of the contract by which they agreed to purchase the bonds for the plaintiff, which, by their concession, was within the ordinary business of the firm. But they neither averred in their

answer, nor gave evidence tending to show that the promise to take back the bonds was beyond the scope of their business. There being no evidence which shows that the transaction was actually beyond the scope of the business of the firm, the question arises whether it was apparently beyond the scope of its business. (*Union Nat. Bank* v. *Underhill*, 102 N. Y. 336.) The case shows that, in addition to the business usually done by bankers and brokers, the defendants were accustomed to purchase and carry securities on margins for their customers. The undisputed evidence is that the managing partner did make the promise upon which the plaintiff recovered, thus asserting his authority to make it in the name, and in behalf of the firm. No evidence is found in the record which would justify the court in holding, as a matter of law, that the promise upon which the action was brought was so far beyond the scope of the business of the firm, that the plaintiff had no right to rely upon it. The evidence was sufficient to cast upon the defendants the burden of rebutting the presumption arising from the evidence and the pleadings, and they having failed to do this no error was committed in refusing to nonsuit on the ground that the managing partner had no authority to bind the firm by this contract.

The third ground upon which a nonsuit was asked for is not supported by the evidence. The undisputed evidence is, that the managing partner of the firm on several occasions advised the plaintiff not to part with the bonds, and assured him that they were good and would ultimately advance in the market. Under these circumstances, the plaintiff was not guilty of laches in not earlier returning the bonds and demanding the price paid. (*Wooster* v. *Sage*, *supra*.)

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.