MARY A. BRYANT *v.* CREDIT SERVICE, INC., a corporation.

(NOVEMBER 26, 1934.)

LAYTON, C. J., RICHARDS and RODNEY, J. J., sitting.

*John Biggs, Jr.,* and *C. Stewart Lynch* for plaintiff.

*Josiah Marvel, Jr.* (of Marvel, Morford, Ward and Logan) for defendant.

Superior Court for New Castle County, No. 142, March Term, 1934.

Rodney, J., delivering the opinion of the Court:

The plaintiff contends that, having bought the bonds and paid the consideration money therefor, she had fully complied with all of her obligations and that the contract ceased to be executory and became executed. The plaintiff relies upon *Emerson v. Universal Products Co.*, 5 *W. W. Harr.* (35 *Del.*) 277, 162 *A.* 779, 781, wherein it was held that the Statute of Frauds did not apply when the executory contract had become executed by "one party immediately, fully and completely complying with his entire obligation * * * [leaving] nothing to be done by the other but the payment of money."

We think that case not applicable to the present facts. Here no liability could attach to the defendant within the year. No actionable breach could possibly arise within that

period for no duty rested upon the defendant to be performed by it within that time. The purchase and payment by the plaintiff was not the sole duty of the plaintiff but this duty consisted also in the fact that the bonds had to be retained for more than a year and the duty of the defendant did not arise merely from the purchase and payment by the plaintiff but only upon the further fact that the bonds were not disposed of to others but were retained by the plaintiff for more than a year. See *Harris v. Porter,* 2 *Harr.* 27, and *Devalinger v. Maxwell,* 4 *Penn.* 185, 54 *A.* 684.

The plaintiff contends that the agreement to maintain a "customer market" is in legal effect an agreement by the defendant to repurchase the bonds after they have been held by the plaintiff for a year. The plaintiff relies, in large measure, upon the principle as expressed in *Meyer* *"Law of Stockbrokers and Stock Exchanges," page* 246:

"An agreement on the part of the seller of securities, or on the part of the broker of the purchaser, to buy back the securities from the purchaser at a later date \* \* \* is not within the scope of the Statute of Frauds and is enforceable even though oral. The original sale and the agreement to repurchase are regarded as an entire contract and not as two separate and independent ones, the latter being in effect an agreement to rescind the former. The Statute is therefore inapplicable."

See, also, the recent case (1933) of *Fitzpatrick v. Associated Gas & El. Co.,* 148 *Misc.* 538, 266 *N. Y. S.* 116; *Fitzpatrick v. Woodruff,* 96 *N. Y.* 561; *Johnston v. Trask,* 116 *N. Y.* 136, 22 *N. E.* 377, 5 *L. R. A.* 630, 15 *Am. St. Rep.* 394; *Vohland v. Gelhaar,* 136 *Wis.* 75, 116 *N. W.* 869, 16 *Ann. Cas.* 781; *Melniker v. Winter,* 105 *N. J. Law* 278, 145 *A.* 318; and *notes in* 7 *Ann. Cas.* 932; 16 *Ann. Cas.* 781; *Ann. Cas.* 1917C, 992; 51 *L. R. A. (N. S.)* 399; 14 *A. L. R.* 402; 59 *A. L. R.* 595; 88 *A. L. R.* 842; *Uniform Laws Ann., Vol.* 1, *p.* 23.

The defendant does not seriously controvert the fore-

going principle but contends that under the present facts the establishment of one contract alone was not within the contemplation of the parties. In companion cases argued with the present, the defendant cites *Hagar v. King,* 38 *Barb.* 200; *Chamberlain v. Jones,* 32 *App. Div.* 237, 52 *N. Y. S.* 998; *Morse v. Douglass,* 112 *App. Div.* 798, 99 *N. Y. S.* 392; *Gainsburg v. Bachrack,* 241 *App. Div.* 28, 270 *N. Y. S.* 727.

We do not think that the foregoing text or any of the cited authorities can be in any way determinative of the present case. They all consider the contracts, therein involved, in connection with what was the original *Section* 17 of the *English Statute of Frauds* or its American counterpart. That section had solely to do with the sale of "goods, wares and merchandise" and, as to sales of ten pounds or upwards, required a note or memorandum in writing of the sale unless the buyer accepted part of the goods sold, and actually received them or gave something in earnest to bind the bargain or in part payment. The cited cases in considering agreements to repurchase merely held that the original contract of sale was taken out of the appropriate *Statute of Frauds* (*Section* 17) by payment and delivery and because the agreement to repurchase was, in effect, an agreement of rescission, it formed part of the original contract and not a separate contract and there was no separate contract to be within the *Statute of Frauds.*

In passing, we may say that *Section* 17 of the *English Statute of Frauds* was not originally adopted in Delaware (*Alderdice v. Truss,* 2 *Houst.* 268) but has been enacted as part of the *Unifom Sales Law by Volume* 38, *Laws of Delaware, p.* 570, *c.* 158, approved April 11, 1933.

Neither the 17th section of the English Act nor any analogous American Act is involved in this case, nor has the defendant pleaded any such Act.

The present case involves solely *Section* 4 of the origi-

nal *Statute of Frauds* (agreements not to be performed within a year) and as to this section the foregoing authorities can have no relevancy. The payment for and delivery of the bonds removes the necessity of written memorandum as to the sale under the original *Section* 17 but does not affect the necessity of a written memorandum as applying to contracts not to be performed within a year.

*Benjamin on Sales* (*6th Ed.*), *page* 177, says:

"A contract of sale, like other contracts, must (if it be not performed within a year) be evidenced by some signed memorandum."

Williston says, 1 *Williston* on *Sales*, § 51:

"It is also to be observed that a contract to sell, like any other contract, may fall within the section of the Statute of Frauds which requires a writing to support an action on an agreement not to be performed within a year."

In England it is entirely clear that an acceptance by a buyer of part of the goods would take the contract out of *Section* 17 of the *Statute of Frauds* but leave the contract still subject to the necessity of written memorandum under *Section* 4 if that section be applicable because the contract was not to be performed within a year. *Prested Miners Co., Ltd., v. Garner, Ltd.,* [1910] 2 *K. B.* 776, affirmed in [1911] 1 *K. B.* 425.

So it has been held in New York that the adoption of the *Sales Act* in 1911 (*Personal Property Law [Consol. Laws N. Y., c.* 41], § 82, *et seq.*) did not have the effect of repealing *Section* 31 of the *Personal Property Law* (*Consol. Laws N. Y., c.* 41) so as to exempt a contract for the sale of goods, when not to be performed within a year from its making, from complying with the requirements of both sections. *David Taylor Co. v. Fanstell Products Co., Inc.,* (1932), 234 *App. Div.* 548, 255 *N. Y. S.* 270, affirmed 261 *N. Y.* 514, 185 *N. E.* 718.

This *Section* 31 of the *Personal Property Law of New York,* which was unrepealed by the *Sales Law,* provides:

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

"1. By its terms is not to be performed within one year from the making thereof."

It is clear that the contract in the present case was not one to be performed within a year.

The plaintiff has pleaded the *New York Sales Law* and contends that the contract, being made and to be performed in New York, is governed by the *New York Law.* The defendant has pleaded the *Statute of Frauds* with no indication as to whether reliance is upon the New York or Delaware Statute. The *Delaware Statute, Section* 2626, *Revised Code* 1915, provides:

"No action shall be brought whereby to charge any person * * * upon any agreement that is not to be performed within the space of one year from the making thereof * * * unless the same shall be reduced to writing, or some memorandum, or note thereof, shall be signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing."

No substantial difference appearing between the two Statutes and no argument being directed to the point, we avoid any question of conflict of Laws, viz., whether the *Statute of Frauds* of the *lex loci contractus* or *lex fori* should govern. See 64 *L. R. A.* 121; *Wharton* on *Conflict of Laws;* 32 *Yale Law Journal,* 321.

It appearing that the contract in this case was not to be performed in a year and therefore within the *Statute of Frauds* and it not appearing that any memorandum of the agreement was made in writing by the defendant or by any one authorized by it, the demurrer to the plea of the Statute of Frauds is overruled.